UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMERICAN EMPIRE SURPLUS LINES INSURANCE CO. | CIVIL ACTION |
| VERSUS | No. 17-3441 |
| DAVIE SHORING, INC. | SECTION I |

### ORDER AND REASONS

Before the Court is Davie Shoring's motion to dismiss certain claims in the above-captioned matter pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Davie Shoring also requests that the Court stay consideration of, or dismiss pursuant to principles of abstention, any remaining claims. American Empire opposes the motion.

For the foregoing reasons, the Court will dismiss some of American Empire's claims, but it will not abstain from adjudicating the remaining claims.

### I.

This case centers on two insurance policies issued by American Empire to Davie Shoring in the mid-2000s.[1] The first policy's coverage period spanned from December 30, 2005 to December 30, 2006 ("the 2005-06 policy"),[2] and the second policy's coverage period spanned from December 30, 2006 to December 12, 2007 ("the 2006-07 policy").[3]

---

[1] *See* R. Doc. No. 1.
[2] R. Doc. No. 1-1.
[3] R. Doc. No. 1-2.

1

These policies impose duties on American Empire to defend and indemnify Davie Shoring with respect to various types of legal claims brought against Davie Shoring.[4] The policies include certain exclusions and exceptions.[5] The policies also provide that Davie Shoring has no right to sue American Empire under the policies' coverage provisions "unless all of [the policies'] terms have been fully complied with" by Davie Shoring.[6] Those terms include notifying American Empire "as soon as practicable of an 'occurrence' or an offense which may result in a claim," as well as fulfilling recordkeeping, notification, and cooperation requirements "[i]f a claim is made or 'suit' is brought."[7]

American Empire alleges that Davie Shoring has not complied with these terms. According to American Empire,

> an unknown number of plaintiffs have filed suits against Davie Shoring in which they seek to recover money damages to compensate them for property damage to their real and personal property or bodily injuries that they claim to have sustained as a result of either Davie Shoring's breach of its contract with the plaintiffs or its negligence.[8]

American Empire contends that these plaintiffs are asserting legal claims against Davie Shoring that fall within the policies' coverage periods, but that Davie Shoring has not fulfilled its obligations under the policies with respect to the suits filed on those claims. As an example, American Empire points to one active state court case

---

[4] *See* R. Doc. No. 1, ¶¶ 8, 26.
[5] *See, e.g.*, R. Doc. No. 1-1, at 28-34, 36.
[6] *See id.*, at 37; R. Doc. No. 1-2, at 33.
[7] *See* R. Doc. No. 1-1, at 36-37; R. Doc. No. 1-2, at 32-33.
[8] R. Doc. No. 1, ¶ 15.

2

against Davie Shoring: *Amy Law v. Davie Shoring, Inc.* ("Underlying Lawsuit").[9] Filed on August 20, 2007, the Underlying Lawsuit involves claims arising out of a contract between Davie Shoring and the Underlying Lawsuit plaintiff that is dated March 24, 2006.[10] American Empire alleges that it learned about the Underlying Lawsuit on January 29, 2016, when the Underlying Lawsuit plaintiff served American Empire with an amended petition for damages asserting a claim against American Empire for the first time in that litigation.[11]

American Empire now seeks a declaration that "no coverage exists for the claims asserted against Davie Shoring" in the Underlying Lawsuit "because Davie Shoring failed to provide timely notice of the suit and claim to American Empire."[12] Moreover, American Empire seeks a declaration that "[t]o the extent that other lawsuits have been filed against Davie Shoring [("Unknown Lawsuits")] and [Davie Shoring] has not provided notice of those suits or claims to American Empire in compliance with" the 2005-06 and 2006-07 policies, "no coverage is owed for those lawsuits as a result of Davie Shoring's failure to timely notify American Empire of the pending suit and claims."[13]

American Empire also seeks declarations that 1) the claims asserted in the Underlying Lawsuit and the Unknown Lawsuits do not qualify as "occurrences"

---

[9] *See* R. Doc. No. 1-3 (petition for damages in the Underlying Lawsuit).
[10] *See* R. Doc. No. 1, ¶¶ 16, 19; *see also* R. Doc. No. 1-5 (contract between Davie Shoring and the Underlying Lawsuit plaintiff).
[11] R. Doc. No. 1, ¶ 24.
[12] *Id.* ¶ 29.
[13] *Id.* ¶ 41.

3

under the policies;[14] 2) the claims asserted in the Underlying Lawsuit and the Unknown Lawsuits fall under the "York Work Exclusion" in the policies;[15] and 3) "no coverage exists for claims against Davie Shoring" in the Underlying Lawsuit "because Davie Shoring . . . fail[ed] to cooperate with American Empire in both the defense and settlement" of the case.[16] Finally, American Empire seeks reimbursement for "amounts it has paid to defend itself and Davie Shoring against" the Underlying Lawsuit and the Unknown Lawsuits "as damages resulting from Davie Shoring's breach of [c]ontract."[17]

With respect to its present motion, Davie Shoring argues that any legal claims arising from the Unknown Lawsuits should be dismissed as unripe[18] or, alternatively, dismissed pursuant to Rule 12(b)(6).[19] Davie Shoring also argues that dismissal under Rule 12(b)(6) is appropriate as to American Empire's claim for reimbursement.[20] Finally, Davie Shoring argues that, to the extent that the Court does not dismiss American Empire's claims, the Court should either stay or dismiss the case on abstention grounds.[21]

## II.

### A.

---

[14] *Id.* ¶¶ 43, 47.
[15] *Id.* ¶¶ 50, 54.
[16] *Id.* ¶ 57.
[17] *Id.* ¶ 65.
[18] *See* R. Doc. No. 13-1, at 4-6.
[19] *See id.* at 6-8.
[20] *See id.* at 8.
[21] *See id.* at 8-12.

4

Davie Shoring argues that American Empire's claims related to the Unknown Lawsuits should be dismissed as unripe under Rule 12(b)(1).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action where the court finds that it does not have subject matter jurisdiction. Where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). This approach "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Where the defendant has questioned the court's subject matter jurisdiction, the plaintiff has the burden of "proving by a preponderance of the evidence that the trial court does" possess the requisite jurisdiction to hear the case. *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

Ripeness is an "essential component[ ] of federal subject-matter jurisdiction." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *New Orleans Public Serv., Inc. v. The Council of the City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987). The primary considerations in the ripeness inquiry are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id.*

With respect to ripeness in the declaratory judgment context, "[a] declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists." *Orix Credit All. Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). Generally speaking, an actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Id.* (quoting *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)) (alteration in original). "Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis." *Id.*

**B.**

Davie Shoring contends that American Empire's claims with respect to the Unknown Lawsuits are unripe.[22] In Davie Shoring's view, American Empire is

---

[22] Davie Shoring does not challenge as unripe American Empire's claims with respect to the known Underlying Lawsuit.

6

attempting to "extend and repurpose the particular circumstances of [the Underlying Lawsuit] into justification for broad declaratory relief from any and all . . . potential claims for which coverage may or may not be available under" the 2005-06 and 2006-07 policies.[23]

For its part, American Empire contends that its inability to affirmatively identify the Unknown Lawsuits does not merit dismissal on ripeness grounds. To American Empire, because these other lawsuits are "*already filed* in various Louisiana courts," its inability to identify them is "irrelevant to an analysis of ripeness."[24]

The Court concludes that American Empire's claims against Davie Shoring with respect to the Unknown Lawsuits are unripe. These claims lack "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Orix Credit*, 212 F.3d at 896. While American Empire states in its opposition to the present motion that it has thus far identified "nine additional suits" filed in federal and state courts in Louisiana that "may be at issue" in this case,[25] American Empire has not amended its complaint to add information respecting these other lawsuits. In fact, even in its opposition American Empire does not explain why it believes that these lawsuits implicate the 2005-06 and 2006-07 policies. For all the Court knows, American Empire has simply identified cases where Davie Shoring is a party, but it

---

[23] R. Doc. No. 13-1, at 5.
[24] R. Doc. No. 16, at 11 (emphasis in original).
[25] *Id.* at 4.

has not distinguished the cases based on their subject matter—and this seems likely, as American Empire also acknowledges in its opposition, after pointing toward these nine other lawsuits, that "it cannot identify specific underlying suits that are at issue" at this time.[26]

Whether any lawsuits concerning the 2005-06 and 2006-07 policies other than the Underlying Lawsuit have even been filed against Davie Shoring is purely abstract and hypothetical at this point in the present litigation. *New Orleans Public Serv.*, 833 F.2d at 586. Were the Court to do as American Empire asks, the resulting opinion would be nothing more than "an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127.

The Fifth Circuit has instructed in no uncertain terms that "a case is not ripe if further factual development is required." *New Orleans Public Serv.*, 833 F.2d at 586. Suffice it to say, American Empire's claims vis-à-vis *unknown* and *unidentified* lawsuits requires further factual development. *Cf. Orix Credit*, 212 F.3d at 896 ("[U]nasserted, unthreatened, and unknown claims do not present an immediate or real threat . . . such that declaratory relief is proper."). Such claims are quintessentially unripe and so are unfit for judicial resolution.

Because the Court concludes that American Empire's claims with respect to the Unknown Lawsuits are unripe, the Court need not consider Davie Shoring's alternative argument that these claims fail under Rule 12(b)(6).

### III.

---

[26] *Id.* at 6.

## A.

Davie Shoring also asserts that American Empire's claim for reimbursement of its and Davie Shoring's defense costs associated with the known Underlying Lawsuit fails under Rule 12(b)(6).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint, or any part of it, where a plaintiff has not set forth well-pleaded factual allegations that would entitle him to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

On a Rule 12(b)(6) motion to dismiss, a court limits its review "to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star*

*Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). In assessing the complaint, the Court must accept all well-pleaded factual allegations as true and liberally construe all such allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Where "the complaint 'on its face show[s] a bar to relief,'" then dismissal is the appropriate course. *Cutrer v. McMillan*, 308 Fed. App'x. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

**B.**

Davie Shoring argues that American Empire "identifies no basis in law or fact that would entitle it to recover any costs of defending Davie Shoring" or itself in the Underlying Lawsuit.[27] American Empire does not respond to this argument.[28]

Louisiana law governs the construction and interpretation of the two insurance policies at issue in this case—and as such whether a breach of the policies occurred. *See Am. Int'l Specialty Lines Ins. Co. v. Canal Indemnity Co.*, 352 F.3d 254, 260 (5th Cir. 2003) ("The parties agree, and Louisiana choice of law rules dictate, that in this action involving the interpretation of insurance policies issued in Louisiana, Louisiana substantive law governs our decision."). When determining Louisiana law, the Court looks to the final decisions of the Louisiana Supreme Court. *In re Katrina Canal Breaches Liti.*, 495 F.3d 191, 206 (5th Cir. 2007).

---

[27] R. Doc. No. 19, at 7; *see also* R. Doc. No. 13-1, at 8 (challenging American Empire's claims for damages).
[28] *See* R. Doc. No. 16, at 11-14 (addressing only the declaratory judgment claims).

Without further amendment, the Court understands American Empire to assert a breach of contract claim that seeks reimbursement as damages. Under Louisiana law, "[t]he essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So.3d 1099, 1108-09 (La. Ct. App. 4th Cir. 2011).

Under the policies, Davie Shoring was obligated to notify American Empire "[i]f a claim is made or 'suit' is brought," as well as cooperate with American Empire in the defense and settlement of the claim or suit.[29] American Empire contends that Davie Shoring did not fulfill those obligations and as a result American Empire suffered injury. Accepting the factual allegations in the complaint as true and construing them in the light most favorable to American Empire, the Court concludes that American Empire has stated a breach of contract claim against Davie Shoring.

**IV.**

With respect to American Empire's remaining claims involving the Underlying Lawsuit—which include claims for both declaratory and monetary relief—Davie Shoring asks the Court to stay or dismiss the claims on abstention grounds.

As an initial matter, American Empire and Davie Shoring argue over the applicable standard by which the Court should determine whether abstention is appropriate.[30] "If the federal suit seeks only a declaration of rights, the district

---

[29] *See* R. Doc. No. 1-1, at 36-37; R. Doc. No. 1-2, at 32-33.
[30] *See* R. Doc. No. 13-1, at 8-12; R. Doc. No. 16, at 14-15.

11

court's discretion to stay or dismiss the suit is governed by a standard derived from" *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942). *Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 250 (5th Cir. 2005). Yet "[i]f the suit involves a request for monetary or other relief, the district court's discretion to stay is 'narrowly circumscribed' by its obligation to hear cases within its jurisdiction, even if declaratory relief is also requested, and the propriety of a stay is governed by the 'exceptional circumstances' standard" articulated in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976). *Am. Guarantee & Liab. Ins. Co.*, 408 F.3d at 250-51.

In this case, American Empire seeks both declaratory and monetary relief. Moreover, the claim for monetary relief is not facially meritless. *See Trent v. Nat'l City Bank of Ind.*, 145 Fed. App'x 896, 898 (5th Cir. 2005) ("When a party seeks both coercive and declaratory relief, we may still apply *Brillhart* if the request for coercive relief is 'frivolous.'"). Therefore, *Colorado River* provides the standard by which the Court must determine whether abstention is appropriate.

### A.

The Court easily concludes that abstention is not appropriate under *Colorado River*. "*Colorado River* discretion to stay is available *only* where the state and federal proceedings are parallel—i.e., where the two suits involve the same parties and the same issues." *Am. Guarantee & Liab. Ins. Co.*, 408 F.3d at 251 (emphasis added). American Empire is not a party in the Underlying Lawsuit.[31] Moreover, the

---

[31] R. Doc. No. 1, ¶ 25; R. Doc. No. 13-1, at 2.

12

Underlying Lawsuit does not involve the scope of the 2005-06 and 2006-07 policies, but rather centers on a contract between Davie Shoring and the Underlying Lawsuit plaintiff.[32] As such, the Court lacks discretion to abstain from this case pursuant to *Colorado River*.

**B.**

Further, even if *Brillhart* and not *Colorado River* provided the controlling standard, the Court would still conclude that abstention is inappropriate. The *Brillhart* standard—as articulated by the Fifth Circuit in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)—consists of seven factors:

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, and 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy, . . . [and 7)] whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Trejo*, 39 F.3d at 590-91. These *Trejo* factors hone in on "the proper allocation of decision-making between state and federal courts," fairness, and efficiency. *The Sherman-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 390 (5th Cir. 2003).

None of the *Trejo* factors weigh in favor of staying or dismissing the action. The Underlying Lawsuit "does not involve the same parties" and "does not involve

---

[32] R. Doc. No. 1, ¶¶ 15-16, 19-22; R. Doc. No. 13-1, at 2.

13

the same legal issues—the scope of [American Empire and Davie Shoring's] insurance policies." *Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 Fed. App'x 159, 166 (5th Cir. 2015). Moreover, there is no indication that American Empire filed suit in expectation of Davie Shoring filing suit, that American Empire was forum shopping, or that any inequities would result from the Court's exercise of jurisdiction. In addition, this Court is by all accounts a convenient forum for the parties, and concerns of judicial economy are not implicated—after all, the pending state action does not involve the same parties and the same issues. Finally, there is no state judicial decree that the Court must interpret in order to resolve the issues in this case. As "[a]ll seven of the *Trejo* factors weigh against dismissal," abstention is also unwarranted under *Brillhart*. *Id.* at 169.

V.

Accordingly,

**IT IS ORDERED** that Davie Shoring's motion is **GRANTED IN PART** and **DENIED IN PART**. All of American Empire's claims involving the Unknown Lawsuits are **DISMISSED** as unripe. In all other respects, Davie Shoring's motion is **DENIED**.

New Orleans, Louisiana, August 8, 2017.

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　**LANCE M. AFRICK**
　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**